ADOPTION OF HELEN
(and a consolidated case[1]).

Suffolk. Essex. April 5, 1999. - June 29, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Minor,* Adoption, Visitation rights. *Parent and Child,* Dispensing with parent's consent to adoption. *Evidence,* Child custody proceeding. *Adoption,* Dispensing with parent's consent, Visitation rights. *Statute,* Construction.

In a proceeding to dispense with parental consent to adoption, clear and convincing evidence supported the judge's findings and conclusion that the mother was currently unfit to care for her child. [859-861]

General Laws c. 119, § 26, does not provide for review and redetermination of an order pursuant to G. L. c. 210, § 3, dispensing with parental consent to adoption, and a probate judge correctly denied a petition seeking such review. [861-862]

After termination of a parent's rights pursuant to G. L. c. 210, § 3, the probate judge did not err in denying, based on the best interests of the child, the parent's motion for visitation pending appeal of the termination decree [862-863], and the judge's findings related to the visitation motion were, on the whole, supported by the record [863-864].

A stay of a decree dispensing with consent to adoption merely preserves the status quo by preventing, pending appeal, the Department of Social Services from requesting the court to allow the adoption of the child, and does not revive or preserve any visitation rights the parent had before the judge terminated her rights pursuant to G. L. c. 210, § 3. [864-865]

PETITIONS filed in the Lawrence Division of the Juvenile Court Department on October 6, 1995.

The cases were heard by *Jose Sanchez,* J., and a motion for a new trial and a petition for review and redetermination were heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 11, 1998.

The case was heard by *Greaney,* J.

*Andrew Cohen,* Committee for Public Counsel Services (*Claudia Bolgen* with him) for the mother.

[1] Care and Protection of Helen.

*Virginia A. Peel* for Department of Social Services.

*Lisa J. Campbell,* for the child, amicus curiae, submitted a brief.

ABRAMS, J. The mother appeals from a judgment of the Juvenile Court dispensing with her consent to adoption of her child, from the denial of a posttrial motion for a new trial, and from the denial of a petition for a review and redetermination hearing.[2] The mother also appeals from the denial of relief pursuant to G. L. c. 211, § 3, by a single justice of this court concerning the denial of a renewed motion for visitation.[3] We granted direct appellate review on the appeal from the trial court. We consolidated the two appeals. We affirm both the decision of the trial judge and the ruling of the single justice denying visitation.

The child was born in June, 1992, and lived with the mother. In October, 1995, the Department of Social Services (department) filed·a report pursuant to G. L. c. 119, § 51A, alleging that the mother and child were staying in a house twice raided due to drug activity. The mother admitted to having a serious substance abuse problem and stated that she was to enter an abuse counselling center. The judge granted the department temporary custody. The child was returned to her mother two weeks later on condition that the mother remain at the substance abuse center. The two remained at the program until February, 1996. At that point, the mother ceased to communicate with the department and her whereabouts were unknown to the department. In August, 1996, the department located the mother and child. The department removed the child from the mother's custody and placed the child in foster care, where the child now resides. The mother failed to communicate with the department from August, 1996, until February 28, 1997.

In September, 1996, a Juvenile Court judge held a seventy-two hour hearing regarding the August custody transfer. Though served by summons, the mother failed to attend the hearing.

---

[2]The child joins in the appeal of the judgment dispensing with the mother's consent to adoption. The child purports to join in the appeal from the denial of the mother's request for a review and redetermination hearing. Although the child was (and is) entitled to file a petition for review and redetermination, the child did not do so. Further, the child did not join in the mother's petition. See note 8, *infra.* On appeal, the child has filed a brief as an amicus curiae.

[3]The mother sought to appeal under S.J.C. Rule 2:21, 421 Mass. 1303 (1995), from the denial of relief by the single justice. We concluded that rule 2:21 was not applicable and stated the mother's appeal could be pursued "according to the regular appellate process."

The department filed a petition for permanent custody and, on February 20, 1997, the Juvenile Court judge held a hearing on the merits. The mother did not attend the hearing. The child was adjudicated in need of care and protection and committed to the permanent custody of the department pursuant to G. L. c. 119, § 26.[4]

In February, 1997, the mother reestablished communication with the department. From March, 1997, until August, 1997, she submitted negative urine screens, attended Alcoholics Anonymous-Narcotics Anonymous meetings, and completed parenting classes. The mother also had three visits with the child.

After a September 2, 1997, visit with her child, the mother failed to communicate with the department. The mother did not reestablish communication with the department until May, 1998.

During the period when the mother did not communicate with the department, a trial was held on whether to dispense with the need for parental consent to adoption. The department presented the testimony of two witnesses and submitted sixteen exhibits in evidence. The mother did not attend.

In May, 1998, the mother filed a motion for visitation and a motion to reopen the evidence. After hearing, both motions were denied. In June, 1998, the mother filed a motion for reconsideration of the denial of her motion for visitation and a motion to reopen the evidence.[5]

In June, 1998, the judge entered an order dispensing with the need for the mother's consent to the child's adoption. The mother filed a notice of appeal and filed a motion to stay the order. The judge denied the stay. The mother appealed and a single justice of the Appeals Court granted a stay. In July, 1998, the judge issued findings of fact and conclusions of law relating to the consent order.

In August, 1998, the mother filed a renewed motion for visitation. After hearing, the motion was denied. The mother filed a

---

[4]The mother filed a notice of appeal from that judgment, but the appeal was not pursued.

[5]According to the mother, she has participated in substance abuse meetings and drug screenings since April, 1998; attended drug counseling since May, 1998; completed parenting classes and courses toward her high school equivalency certificate; and has been employed since March, 1998. Since May, 1998, the mother has requested weekly visitation with the child, but the requests have been denied.

petition pursuant to G. L. c. 211, § 3, before a single justice of this court seeking relief. Relief was denied. In September, 1998, the mother filed a petition for a review and redetermination hearing, pursuant to G. L. c. 119, § 26. After hearing, the motion was denied.

We turn now to the merits of the appeal.

1. *Termination proceeding.* The mother and child challenge the decree dispensing with her consent to adoption pursuant to G. L. c. 210, § 3. They argue that the judge's findings are not supported by the evidence presented at the termination proceeding and do not provide clear and convincing evidence of parental unfitness. We disagree.

To determine whether to dispense with parental consent to adoption, the judge must evaluate whether the parent can assume the duties and responsibilities required of a parent and whether dispensing with consent will be in the best interests of the child. See G. L. c. 210, § 3; *Adoption of Mary*, 414 Mass. 705, 710 (1993). Before a judge may remove custody from a parent and award it to the department, the judge must find, by clear and convincing evidence, that the natural parent is unfit to further the welfare and best interests of the child. See *Care & Protection of Stephen*, 401 Mass. 144, 150 (1987); *Custody of Two Minors*, 396 Mass. 610, 619 (1986). Subsidiary findings must be proved by a fair preponderance of the evidence. *Adoption of Quentin*, 424 Mass. 882, 886 (1997). We will not disturb these findings absent a showing that they are clearly erroneous. *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659, 670 (1986). Even so, we require that the judge's findings be specific and detailed, so as to demonstrate that close attention was given to the evidence. *Adoption of Hugo*, 428 Mass. 219, 224 (1998). *Custody of a Minor (No. 1)*, 377 Mass. 876, 886 (1979).

We conclude that the department met its burden of proving parental unfitness by clear and convincing evidence. Although some of the judge's subsidiary findings were erroneous, the judge amply supported his conclusion that the mother is currently unfit to care for her child. The judge made fifty-nine findings that demonstrate a history of substance abuse, a pattern of late and missed appointments, failure to communicate her whereabouts to the department, and a minimal amount of com-

munication with the child over a significant period of time.[6] Nearly every finding was supported by the record which included the testimony of the department's social worker. The judge cited to the evidence in making nearly every finding. Specifically, he found that, after the mother's unsuccessful attempts to address her substance abuse problem and a 1994 incident of abandonment, the department was awarded custody of the child in 1997. The department did not know where the mother was, and the mother failed to appear at the temporary custody hearing or at the care and protection trial. When the mother did resurface a short time later, she repeatedly missed appointments with the department. The mother also failed to keep appointments to visit with her child, including a visit scheduled in June, 1997, for the child's fifth birthday. In September, 1997, the mother disappeared. She did not communicate with the department for eight months. From these facts, the judge could conclude the mother is unfit to parent her child.

The mother and child take issue with minute aspects of the judge's findings. For example, they point out that the dates of missed appointments and visits are unsupported. They also quibble with how long after a missed appointment the mother called the department, or exactly how late she was for visits.

We agree with the department that, although the judge's findings on these points may have been erroneous, the judge's overall conclusion of parental unfitness is fully supported by the record. The judge may have been mistaken regarding the dates of appointments, but the record shows a pervasive pattern of missed appointments and visits. The judge may have erred in describing how late the mother was for visits, but the mother does not disagree that she was late for visits and that weeks passed before she offered any explanation for her absence.[7] We

---

[6]Although the findings are numbered one through sixty-nine, finding thirty-three is followed by finding forty-four. This gap does not affect the substance of the findings. The findings follow logically.

[7]A small number of the judge's fifty-nine findings included material he had admitted only to set the stage and not for its truth. Some of these findings are supported by other evidence. None is critical to the judge's over-all conclusion of parental unfitness.

The mother and child also complain that the judge ignored the mother's progress in her relationship with her child and in overcoming her substance abuse problems. However, "the judge's assessment of the weight of the

agree with the judge that the evidence of the mother's unfitness was clear and convincing.

2. *Review and redetermination.* After the judge dispensed with the mother's consent to adoption pursuant to G. L. c. 210, § 3, the mother filed a petition for review and redetermination pursuant to G. L. c. 119, § 26. That petition was denied.[8]

General Laws c. 119, § 26, governs review and redetermination hearings. That statute provides in part that "the department, parents, person having legal custody of, counsel for a child, the probation officer, guardian or guardian ad litem may petition the court not more than once every six months for a review and redetermination of the current needs of such child whose case has come before the court." This provision is, "primarily, the means by which a parent or other interested party, including the department, may bring to a judge's attention a change in the situation of a child, or of a child's parent, which might warrant reconsideration or modification of the original order adjudicating the child in need of care and protection." *Care & Protection of Isaac*, 419 Mass. 602, 611-612 (1995). The statute explicitly states that "any person against whom a decree to dispense with consent to adoption has been entered . . . shall not have such right of petition for review and redetermination."

---

evidence and the credibility of the witnesses is entitled to deference." *Custody of Two Minors*, 396 Mass. 610, 618 (1986). The findings reflect a determination by the judge that the department's social worker was credible.

Finally, the mother and child challenge the judge's assessment of three of the thirteen factors contained in G. L. c. 210, § 3. The department admits that the judge's findings as to two of the factors were erroneous. Those factors include "the willful failure to support the child where the child is not in the custody of the parent" and "the conviction of a parent . . . of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years." The remaining finding at issue, regarding the parent's absence or ability to meet the child's needs and the bond with the substitute caretaker, was supported by the record. We conclude that the judge adequately weighed the factors.

[8]The mother and child concede that the mother alone filed this petition. However, they argue that the child supported this petition, that "for all intents and purposes [it was] a joint petition, and the trial [judge] treated it as such." Further, they note that the child appealed from the denial of the petition. We disagree with the characterization of this as a joint petition. While the child was (and is) entitled to seek a hearing under this provision, the child did not so petition. Thus, the child has no basis for appealing from the denial of the petition.

Accepting the mother's stance and permitting posttrial review and redetermination hearings would contradict the language of the statute. Further, it would allow a parent who has been deemed unfit continually to interfere with the child, initiate multiple, repetitious litigation, and hinder and delay the eventual adoption of the child into a fit environment.[9] The judge followed the statute.[10] There was no error.[11]

3. *Visitation.* The trial judge denied the mother's motion for visitation pending appeal of the termination decree. The mother sought relief from the single justice. The single justice denied the petition. According to the mother, the right to consent to adoption is independent of the right to visitation. Relying on due process interests relating to the destruction of the parent-child relationship, public policy concerns about the creation of "legal orphans," and visitation rights afforded a parent who has lost custody, she argues that the elimination of the right to consent does not extinguish her right to visitation. The mother asserts that the judge was required to make specific findings that visits would harm the child before terminating visitation. The judge focused on the best interests of the child and on parental unfitness. There was no error.

In arguing that the judge was required to find harm to the child, the mother has failed to appreciate the differences between the parent-child relationship before and after the judge has dispensed with the parent's right to consent to adoption. In *Custody of a Minor (No. 2),* 392 Mass. 719 (1984), we reviewed a decision awarding custody to the department and terminating visitation rights of the parents. Significantly, there had been no decision dispensing with consent to adoption. We stated that a

[9]In *Adoption of Inez,* 428 Mass. 717, 723 (1999), quoting *Adoption of Paula,* 420 Mass. 716, 731 (1995), we recognized that "[a] judge, when deciding whether to dispense with consent to adoption, 'must focus on present circumstances . . . and, in appropriate cases, the likelihood of future improvement, in a parent's ability to care for the child.' " See *Adoption of Carlos,* 413 Mass. 339, 350 (1992). This rule, however, does not give a parent unfettered access to a review and redetermination proceeding after the court has dispensed with consent.

[10]Contrary to the mother's contention, there is no indication that the judge was punishing the mother by refusing to grant her a review and redetermination hearing. Rather the judge correctly followed the words of the statute.

[11]After trial, but before the judgment was entered, the mother filed a motion for a new trial. On appeal, she relies on the same arguments raised in appealing from the review and redetermination decision. The mother also filed a motion to reopen the evidence. The denial of that motion is not argued on appeal.

judge should apply the same standard to visitation rights as he does to a permanent custody decision. Thus, before terminating such rights, "a judge must make specific findings demonstrating that parental visits will harm the child or the public welfare." *Id.* at 726.

In *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 392 Mass. 738 (1984), we distinguished the level of review applied by the trial judge in making custody determinations from the test to be applied in termination proceedings. "The focus of [a termination] proceeding is not whether the parent should be deprived of 'custody' in order to safeguard the child's well-being, but rather whether 'it would be in the best interests of the child *for all legal relations [with the parent] to be ended*' (emphasis added). *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984). Termination denies the natural parents physical custody, as well as the rights ever to visit, communicate with, or regain custody of the child." *Id.* at 741, quoting *Santosky* v. *Kramer*, 455 U.S. 745, 749, 753 (1982).

While posttermination visitation may be allowed, the proper focus is on the best interests of the child. Here, the judge properly dispensed with the mother's right to consent to adoption after determining that she was an unfit parent. The judge then declined to permit further visitation. There was no error.

The mother next raises numerous arguments with regard to the trial judge's findings relating to the visitation motion. She complains that the judge erred by relying on an affidavit of a department attorney, not admitted in evidence, and by relying on oral proffers of department attorneys. She also asserts that the findings were not supported by the record and that the judge abused his discretion by ignoring evidence related to the parent-child relationship, while relying on the department's proposed findings.

We agree that the judge should not have cited the proffers or the affidavit in his findings as neither was admitted in evidence. We conclude, however, that a new hearing is not warranted. The judge was intimately familiar with the details of this parent-child relationship. He made numerous findings when he dispensed with the mother's consent to adoption. He then cited many of those findings in deciding this motion. Discounting the proffers and the affidavit, the findings show that the mother

repeatedly abandoned the child; had a persistent substance abuse problem; and failed to attend meetings, visits, and court proceedings. The findings also reflect that the judge considered the mother's attempts to fight her substance abuse problem. The findings, on the whole, are supported by the record, and support the judge's decision not to permit visitation.[12] The judge did not err in denying the motion.

4. *The stay.* Relying on the general rule that a stay serves "to preserve the rights of the parties during the pendency of an appeal," Reporters' Notes to Mass. R. A. P. 6, Mass. Laws Ann., Rules of Appellate Procedure 35 (Lexis 1997), the mother next argues that a stay of the decree dispensing with consent,[13] issued by a single justice of the Appeals Court, preserves her rights to visitation and a review and redetermination hearing pending appeal.[14] See *Turner Broadcasting Sys., Inc.* v. *FCC*, 507 U.S. 1301, 1302 (1993) (Rehnquist, C.J., in chambers), quoting *Ohio Citizens for Responsible Energy, Inc.* v. *NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers) (stay "temporarily suspends 'judicial alteration of the status quo' ").

Where, as here, the best interests of the child are the judge's sole concern, we conclude that the stay does not revive visitation rights which were largely ignored by the mother prior to trial. It would be anomalous to permit a parent found to be unfit to continue a parent-child relationship pending appeal without a specific order for visitation and factual findings as to why visitation pending appeal would be in the best interests of the child. "Termination denies the natural parents physical custody, as well as the rights ever to visit, communicate with, or regain custody of the child." *Petition of Catholic Charitable Bureau, supra* at 741. Here, the judge had the matter before him for over two years and determined that there was a record of abandonment, substance abuse, failure to attend meetings and visits, and tardiness in visits. On these facts, the judge did not

---

[12]The mother's assertion that the judge ignored evidence that the visits which did occur were "joyful, not harmful, to the child" does not alter our result. The judge was free to accept or reject this evidence. In view of the record as a whole, the findings and conclusion that visitation was not in the child's best interests were supported.

[13]The order states: "The order dispensing with consent to adoption entered June 26, 1998 . . . is stayed pending further order of this court or a single justice thereof."

[14]We note that, while this issue is technically moot, it is likely to arise in other cases. We therefore address it here.

err in concluding that visitation pending appeal was not in the child's best interest. The stay simply prevents the department from asking the court to allow the adoption of the child pending appeal.[15]

The judgment dispensing with the mother's consent to adoption is affirmed. The judgment of the single justice denying relief pursuant to G. L. c. 211, § 3, is affirmed.

*So ordered.*

---

[15]We reject the mother's assertion that the stay preserves her rights to review and redetermination. We have already concluded that the mother is not entitled to review and redetermination. See *supra.*