The father appeals from a decree issued by a judge of the Juvenile Court terminating his parental rights to his son, Zarek, and approving the plan for adoption. On appeal, the father asserts that the judge's findings of unfitness were not supported by clear and convincing evidence. We affirm.
Discussion. A trial judge's findings of fact are entitled to considerable deference. We "reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). Subsidiary findings of fact must be proved by a fair preponderance of the evidence and taken together, these findings must prove by clear and convincing evidence that the parent is unfit. See Adoption of Kimberly, 414 Mass. 526, 528-529 (1993) ; Adoption of Helen, 429 Mass. 856, 859 (1999). "A finding is clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Adoption of Cecily, 83 Mass. App. Ct. 719, 726 (2013) (quotation omitted).
Of the judge's 160 factual findings, the father challenges three sets of findings concerning the father's hygiene, mental and substance use issues, and judgment regarding supervision of the child. The father properly does not (and could not, given the nature of the evidence in this case) challenge the adequacy of the remaining factual findings. These include the unstable and transitory nature of the father's relationships, his decision to leave the State and the resulting decision not to maintain contact with the child for nearly a year, his statements to Department of Children and Families (department) social workers indicating a lack of interest in parenting Zarek, his inability to assess or respond to Zarek's needs during visits, his inability to obtain or maintain stable housing, and the lack of compliance with department service plans. These unchallenged findings are themselves sufficient to support the judge's ultimate findings and conclusions regarding parental unfitness, without regard to the challenged findings. We address the challenged findings because the father has asked us to consider them, and to explain the bases of our decision.
1. Hygiene. The father claims error in the judge's findings regarding his body odor and lack of personal hygiene, contending that the judge engaged in improper speculation concerning the cause of the condition. The department social workers observed that the father had a strong body odor and disheveled and unlaundered appearance. The judge also noted the father's odor and appearance during the trial. On appeal, the father contends that he has been unfairly penalized for an unknown medical condition. The father did not produce any evidence of doctor visits that would corroborate his assertion that the odor was attributable to some kind of medical condition; he did not take advantage of the department's efforts to help him obtain health insurance. In addition to the deficits in the father's body hygiene, the father's teeth were green and rotting. Although the father testified that his dental infection began at the age of eleven, he declined treatment for it as an adult.[3] As a result, the father stopped brushing his teeth due to the pain of the infection, which worsened the condition. The trial judge was permitted to consider evidence of the father's ability to care for his own basic medical needs, and to draw appropriate inferences as to the father's ability to care for the child's basic physical needs.
2. Mental health. The father's service plan required him to complete mental health and substance use evaluations. The department social worker believed such an evaluation was necessary because the father admitted that he used to be a heavy user of alcohol and marijuana. She also suggested a mental health examination because of a pattern of general impulsiveness and instability in personal relationships, housing, and employment, the lack of hygiene, an apparent lack of awareness of or ability to respond to the needs of the child, and possible cognitive limitations.[4] The father did not participate in a mental health or substance use evaluation. Nor did he attend a court-ordered court clinic evaluation.
The father contends that the judge made unsupported findings regarding his mental state, and that the judge's ultimate conclusion that the evidence "suggests some mental health issues" was thereby tainted. The trial judge did not make findings as to whether the father suffered from cognitive limitations, mental health issues, or substance use disorder. Rather, the judge found that the social worker's concerns were well founded because the constellation of all of the behaviors suggested that there may have been mental health or substance use issues. The father's failure to undergo evaluation left the father without an explanation for, mitigation of, or treatment for behavior which otherwise amply supports the judge's conclusion that the father is unfit to care for Zarek, and is likely to remain so for the indefinite future.
3. Grandfather. At the time of trial, the father was living with his father in an elderly housing residence that did not allow children. The paternal grandfather was previously convicted of rape of a child and indecent assault on a child, which the father acknowledged. The father testified that he did not plan to live with Zarek at the paternal grandfather's residence because children were not allowed to live there, but planned to secure alternative housing in the future. However, the father also testified that he did not "think it was a problem that [Zarek came] to [the] house even though [the paternal grandfather] is a registered sex offender." The father contends that the trial judge incorrectly found that the father "stated" that he would allow the paternal grandfather "unsupervised" and "unrestricted" access to Zarek. Even if the finding was in that sense erroneous, the determination of unfitness stands, where the ultimate conclusion of unfitness is supported by the record. See Adoption of Helen, 429 Mass. at 859-861 ; Care & Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003).
Conclusion. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment regarding the father or his efforts, but rather a conclusion that the best interests of the child warranted termination of parental rights. That conclusion was supported by the evidence.
Decree affirmed.

For example, he had visited a dentist four years earlier, but declined treatment. The father testified that if he received MassHealth, he would be able to have his teeth pulled while he was "asleep," which he preferred. The department social worker provided him an application for MassHealth, but he did not mail the application until a year later.

As the judge put it, the father lived "a nomadic lifestyle, completely dependent on the kindness of others." The department attempted to follow up with the father regarding housing, health care, parenting classes, medical evaluations and the like, but he moved to New Hampshire with his girl friend and failed to respond to the department's efforts to contact him. When he did respond, he indicated a lack of interest in caring for Zarek, and stated that he needed to return to New Hampshire because his girl friend needed his help with her children. The move rendered him ineligible for MassHealth, thus frustrating efforts to obtain substance use and mental health evaluations. The father stated he was too busy looking for a job to sign up. When he did return to Massachusetts, he stated his intention to move into a shelter with a new girl friend and her daughter.