NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-916

MARCIE E. LOMBARD

vs.

BRIAN M. MCCARTHY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father, Brian McCarthy, appeals from (1) a Probate and Family Court judgment regarding custody of a nonmarital child and numerous related postjudgment orders[1]; and (2) a single justice order denying his request for a stay of the judgment pending appeal.[2]  We affirm.

Discussion.  1.  Exclusion of evidence.  Following a status conference on November 27, 2023, the judge issued a trial scheduling order (order) that the parties produce any documents

_____

[1] The father appeals from orders dated May 16, 2024 (denying his motions for relief from judgment and for evidentiary hearing); May 29, 2024 (denying his motions for reconsideration and to strike exhibits); and June 20, 2024 (denying his motion for relief from judgment).

[2] The father's appeal from the single justice order was consolidated with his appeal from the Probate and Family Court judgment and orders.

they wished to present at trial "no later than December 15, 2023." During the status conference, the judge addressed the father directly, explaining the importance of reading the order thoroughly. Specifically, the judge stated,

> "[W]hen you receive it, read it, all of it . . . [b]ecause it has very tight deadlines, and very particular deadlines. And if you don't follow them, there are evidentiary sanctions meaning that you may not be able . . . to put them in."

The father responded, "Yes, yes."

The father sent his evidence to the mother's attorney by e-mail at or around 6:09 P.M. and 10:56 P.M. on December 15, 2023, and 1:10 A.M. on December 16, 2023. In response, the mother's attorney filed a motion in limine to exclude this evidence arguing that it violated the deadline in the order. At the pretrial conference on January 3, 2024, the mother's attorney notified the judge that the father had sent his evidence after 5 P.M. on December 15. The judge then addressed the father: "So the deadline, generally it's 4:00, even if I gave you until 5:00 which is end of business. Why was it not sent within the deadline?" The father responded, "I thought we had until the end of the day on the 15th." The mother's attorney also explained that the evidence the father had produced on December 15 and 16 was "an absolute document dump." She stated that it contained "700 text messages, 635 pages of [Our Family Wizard], 317 photographs . . . six videos . . . 207 pages of various

2

studies and reports he researched, letters from people," and affidavits. She represented that the father had not created an index or list of documents and media to facilitate the creation of the joint exhibit list the judge had ordered the parties to create. Nevertheless, the mother's attorney and her staff had reviewed this information, identified documents that they agreed were admissible, generated a list of these documents, and notified the father. Moreover, pursuant to the scheduling order, the mother's attorney created binders of these uncontested items for the father and the judge.

The mother's attorneys also notified the father that they would contest the admission of the remaining information he had produced and explained that, pursuant to the order, it was his obligation to generate a list of any contested exhibits he wanted to introduce. The mother's attorneys then created binders of the father's contested information and gave them to him.

The judge then instructed the father to "pare down your exhibits" before trial. The father responded that he did not have any contested exhibits because he had sent them after 5 P.M. on December 15. The judge and the mother's attorney then reminded the father that the mother's attorney had agreed that he could introduce some of the evidence he had produced after 5 P.M. on December 15.

3

After the trial conference, the judge endorsed the mother's motion in limine as follows:  "Parties shall meet and agree on the uncontested exhibits.  Any exhibits forwarded after 5 P.M. on 12/15/23, to which plaintiff does not agree, are precluded from entry."  Based on the judge's statements at the hearing and this order, it appears that the judge expected that, if the father wanted to introduce any of his "contested" evidence, he could discuss it with the mother's attorney prior to the trial, and if she agreed, he could introduce it.  The father contends that the judge erred by granting the mother's motion in limine to exclude his trial exhibits and the exclusion of this evidence violated due process and his right to present a defense.

"Trial judges have broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial" (quotation and citation omitted).  Mattoon v. Pittsfield, 56 Mass. App. Ct. 124, 131 (2002).  A trial judge's ruling on the exclusion of evidence as a sanction is reviewable for an abuse of discretion.  Commonwealth v. Sanford, 460 Mass. 441, 445 (2010).  A reviewing court will not find an abuse of discretion unless "the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

4

The father argues that he complied with the order by providing his materials before 11:59 P.M. on December 15, 2023. Assuming without deciding that the father was permitted to submit evidence to the mother's attorney until midnight on December 15, 2023, we disagree that he complied with the order.

The order required much more than simply serving evidence on the opposing party by a specific deadline. It also required the parties to work together to determine what evidence they could agree would be introduced at trial, and to develop a process to introduce it in an orderly and efficient manner. To the extent that the parties disagreed, the order required the parties to generate a "joint contested exhibit list with binder of exhibits all to be filed with the court at the trial status conference."

The father failed to comply with the order in numerous ways. First, he produced the evidence he intended to introduce in a chaotic disorganized format that frustrated the judge's intent that the parties work together in an orderly manner to identify and address evidentiary issues prior to trial. Second, he failed to work cooperatively with the mother's attorney to resolve the disputes that his disorganized evidence production created. Third, he failed to comply with the order's requirement that, to the extent that he wanted to introduce contested evidence as exhibits, he create a proposed exhibit

5

list by December 20, 2023, that was particularized and not generic.  Notwithstanding that the mother's attorneys worked with the father to identify evidence that they would not contest, assembled that uncontested evidence in a binder which they presented to the judge,[3] assembled the remaining contested evidence in a second binder which they made available to the father, and reminded him that it was his obligation, pursuant to the scheduling order, to generate a particularized proposed contested exhibit list for the court by December 20, 2023, he failed to do so.  In fact, he still had not generated the list by the pretrial conference on January 3.

Finally, any prejudice from the judge's exclusion of the father's evidence was mitigated by the fact that the mother's counsel reviewed as much of it as she could, identified documents that appeared admissible, and included them in the uncontested evidence binder she prepared for the judge.  Beyond that, the judge reminded the father that, even after January 3, he could "pare down [his] exhibits" (presumably contested) and "work together" with the mother's counsel to agree on other uncontested exhibits prior to trial.  For all of these reasons,

---

[3] Given that the mother's counsel agreed not to contest some of the evidence the father disclosed on or after December 15, 2023, the judge did not exclude all of that evidence.

the judge did not abuse her discretion in excluding the father's evidence.

Additionally, the father has failed to demonstrate that he suffered any prejudice from the exclusion of his evidence. The father has not identified any specific evidence which the judge excluded and which the father claims was both admissible and material. An appellant bears the burden of presenting appellate arguments and producing a record appendix that are adequate for appellate review. See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019); Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019). The rule "is more than a 'mere technicality. It is founded on the sound principle that the right of a party to have this court consider a point entails a duty; that duty is to assist the court with argument and appropriate citation of authority.'" Cameron v. Carelli, 39 Mass. App. Ct. 81, 85-86 (1995), quoting Lolos v. Berlin, 338 Mass. 10, 14 (1958). While we recognize the inherent challenges in proceeding pro se, both parties represented by counsel and pro se litigants are required to present materials necessary for appellate review. See Brown v. Chicopee Fire Fighters Ass'n, Local 1710, IAFF, 408 Mass. 1003, 1004 n.4 (1990) ("Although some leniency is appropriate in determining whether pro se litigants have complied with rules of procedure, the rules nevertheless bind pro se litigants as all other litigants").

The father has not identified any specific evidence which he provided to the mother's counsel, which the mother's counsel contested, and which he believes is admissible. Therefore, we cannot determine whether the judge erred in excluding any of the father's contested evidence and whether any error was prejudicial.

2. Factual errors. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge . . . the credibility of the witnesses." R.D. v. A.H., 454 Mass. 706, 718 (2009), quoting Mass. R. Dom. Rel. P. 52(a). We will not disturb the trial court's judgment based on minor factual errors where the judge's overall conclusion is fully supported by the record. See Adoption of Sherry, 435 Mass. 331, 336 (2001) (although some of judge's findings were erroneous, judgment not dismissed "when error did not affect the outcome"); Adoption of Helen, 429 Mass. 856, 859 (1999) (notwithstanding that some of judge's subsidiary findings were erroneous, judgment was affirmed because he amply supported his overall conclusion).

None of the factual findings that the father contests go to the heart of the judge's rationale. For example, the father disputes finding 45, which states, "In April of 2022, as a result of a missed Soberlink test, Father did not see [child] for 9.5 weeks. During that time, he had no contact with his

8

son."  The father contends that this period of no contact with his son was because of a conflict between himself and the mother's family, and not because of a missed Soberlink test.[4]

The fact that the father had no contact with the child for nine and one-half weeks from April to June in 2022 because of conflict with the mother's family rather than a missed Soberlink test was not important to any of the judge's ultimate rulings. Indeed, the judge found that there was conflict between the father and the mother's family that resulted in lost parenting time for the father.  Moreover, the judge found, correctly, that the father later lost parenting time because of missed Soberlink tests.  Both of these findings were supported by the record.

Additionally, the father contends that finding 33 erroneously states that he "took steroids and injected himself with Human Growth Hormone."  Given that there is nothing in the record that indicates the father was taking steroids, we agree the court erred in this regard.  However, the fact that there is no evidence that the father was taking steroids is immaterial to the judge's rationale which ultimately turned on her conclusions that the father does not have a "serious plan to understand his addiction, regulate his emotions, and maintain his sobriety."

_____

[4] We agree with the father that this finding of fact was erroneous.  The trial court did not order the father to begin Soberlink testing until June 13, 2022.

9

By contrast, findings 25 and 26, also disputed by the father, were important to the judge's rationale. Finding 25 states, "Mother testified credibly that Father would drive while alcohol impaired." Given that the mother did testify to this, we find no error. Finding 26 states, "Father's medical records confirm that he consumed 10 to 15 vodka drinks per day." Again, this finding is supported by the record and thus not erroneous.

Further, the father claims that the judge demonstrated a clear bias in favor of the mother by "mischaracterizing" and "ignoring" certain evidence. These claims are meritless. "[T]he judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference." Custody of Eleanor, 414 Mass. 795, 799 (1993). The father's dissatisfaction with the judge's credibility determinations does not create a cognizable claim of judicial bias. See Adoption of Jacob, 99 Mass. App. Ct. 258, 266 (2021).

3. Refusal to release the GAL report. The father also argues that the court's refusal to release the GAL report to him to use in his appeal was a violation of due process because it "obstruct[ed] the appellate court's ability to evaluate whether the custody decision was fair and impartial." The record contradicts this claim.

The trial court's order denying the release of the report to the father states that the report "shall be included by the

10

Middlesex Registry in the Exhibits compiled and forwarded to the Appeals Court."  Indeed, we received the report and have reviewed it.

4.  Custody determination.  The father argues that the court erred in awarding sole legal custody to the mother because there was not clear and convincing evidence of the father's unfitness.  The father relies on an incorrect legal standard.  "[C]ustody orders and judgments [including those under G. L. c. 209C] are made on the basis of a determination of the best interests of the child . . . and a judge may consider any factors found pertinent to those interests in the circumstances of the dispute."  Custody of Zia, 50 Mass. App. Ct. 237, 243 (2000).  This standard vests the trial judge with considerable discretion.  See Charara v. Yatim, 78 Mass. App. Ct. 325, 334 (2010) ("What is in a child's best interest depends upon the particular needs of the child, and is left largely to the discretion of the judge").  The trial judge's custody determination correctly focused on the best interests of the child and was well-supported by the record.  We discern no abuse of discretion.

5.  Other constitutional claims.  The father contends that the judge's order requiring him to remove his firearms from his home violates his right to bear arms under the Second Amendment to the United States Constitution.  The GAL proposed this

11

requirement in her report.  In the order, the judge announced the GAL report would be entered as an exhibit at trial.  The judge then reminded the father of this fact at the final trial conference.  Therefore, the father had clear notice of this recommendation but did not challenge it at trial or assert that it would violate his constitutional rights.  Accordingly, the father has waived this claim.  See Care and Protection of Zeb, 489 Mass. 783, 787 (2022) (mother's claim that plan for permanent guardianship was too vague was waived when mother failed to object to permanency plan at trial); Adoption of Willow, 433 Mass. 636, 651 (2001) (claim that separation would not be in children's best interest was waived; "it was abundantly clear the department was recommending separate placements," and mother failed to object to this at trial).

Further, the father argues that the admission of the GAL report violated his right to confrontation under the Sixth Amendment to the United States Constitution because he was not provided an opportunity to cross-examine the GAL.  "There is no right of confrontation in civil proceedings."  Covell v. Department of Social Servs., 439 Mass. 766, 788 (2003).[5]

_____

[5] In light of the above, we discern no error in the single justice's denial of the father's request for a stay pending appeal on the basis that the father failed to establish a likelihood of success on the merits.

12

Conclusion. The judgment dated March 12, 2024, is affirmed. The orders dated May 16, 2024, May 29, 2024, and June 20, 2024, denying the father's postjudgment motions, are affirmed. The single justice order dated February 13, 2025, denying the father's request for a stay, is affirmed.[6]

So ordered.

By the Court (Ditkoff,
D'Angelo & Wood, JJ.[7]),

Clerk

Entered: December 18, 2025.

---

[6] The mother's motion for appellate attorney's fees is denied.

[7] The panelists are listed in order of seniority.

13